```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**DAVID BOGGS, doing business as**
**Emily's Trucking Company,**

      **Plaintiff,**

**v.**                                   **Civil Action No. 2:10-0608**

**FOLA COAL COMPANY, LLC,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

Pending is defendant's motion for summary judgment, filed January 6, 2011.

### I.  Factual Background

This action arises out of a contractual relationship between plaintiff David Boggs, the owner and operator of a coal hauling company, and defendant Fola Coal Company, LLC ("Fola"), a coal operator. Starting in 2005, plaintiff contracted to provide coal hauling services to defendant at its mining site in Clay County, West Virginia. (Compl. ¶ III). The parties thereafter entered into a series of renewable one year contracts up to and

including 2008. (Def.'s Mot. Summ. J. Mem. at 1).[1] When the 2008 contract expired, plaintiff was called upon to bid for a renewal of the contract for the following year. (Compl. ¶ IV). Defendant's bid request stated that the agreement would be for an initial term of twelve months, subject to renewal. (Id.). The agreement could be terminated by either party, without cause, on 90 days notice to the other party. (Id.). In addition, defendant could unilaterally terminate the agreement if plaintiff's safety performance was inadequate. As defendant's bid request pertinently provided:

> Any OWNER supervisor personnel observing a Contractor or his/her employee not following the safety program submitted for qualification shall address the problem with the Contractor's supervisor in charge. If reasonable efforts do not cause the Contractor to correct significant deficiencies in safety performance, that Contractor should be terminated.
>
> * * * *
>
> Failure to comply with safety performance policies or applicable federal, state, and local laws, rules and regulations will be cause for cessation of activity and/or contract termination.

(Def.'s Mot. Summ. J., Ex. A, Attachments C & D to Fola's Request for Quotation). Plaintiff's bid for the 2009 contract was

---

[1] Because plaintiff has not responded to defendant's summary judgment motion, the court views as uncontroverted the facts established by defendant's motion and supporting exhibits. See Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993).

accepted and the contract was renewed, subject to the foregoing terms and conditions in defendant's bid request.  (<u>See</u> Compl. ¶ V).

Regarding plaintiff's safety record in the year 2009, Doug Martin, a Fola safey inspector, testified as follows:

> Q. We have various papers here which . . . reflect an ongoing pattern of your involvement with Emily's Trucking at least through the year 2009.  Can you tell me about your impression of the way in which Emily Trucking conducted its operations from a safety standpoint?
>
> A. Poorly.
>
> Q. Why do you give them a rating of poorly?
>
> A. Because concerns that were brought to their attention never improved.

(Def.'s Mot. Summ. J., Martin Dep. at 10-11).  Among these unaddressed "concerns" were "[i]ndividuals and the owner not wearing what they were supposed to be wearing, hard hats, glasses, stripes, gloves" while working at Fola's mining site.  (<u>Id.</u> at 11-12).  The parties' contract expressly required plaintiff's employees to wear such protective gear on-site.  (<u>See id.</u>, Attachment C to Fola's Request for Quotation ("Hard hats, safety shoes with metatarsals, metacarpal gloves and eye protection must be worn at all times while on OWNER's property")).  Martin also opined that plaintiff's trucks were not

3

maintained properly, citing problems with the vehicles' steering, brakes, and lights.  (<u>Id.</u>, Martin Dep. at 15).[2]

After numerous discussions with plaintiff regarding these safety concerns yielded no improvement, Martin recommended termination of plaintiff's contract in June 2009 to John Goroncy, a General Superintendent at Fola.  (<u>Id.</u> at 17).  On June 23, 2009, Goroncy met with plaintiff to discuss his dissatisfaction with the company's safety performance.  Goroncy warned plaintiff "that he had to improve his safety record and his compliance or else his services would be terminated."  (Def.'s Mot. Summ. J., Goroncy Dep. at 60).

On September 2, 2009, plaintiff's worksite was inspected by the West Virginia Office of Miners' Health Safety and Training ("MHS&T").  Following this inspection, MHS&T issued four citations to plaintiff for safety violations.  (<u>Id.</u>, Ex. B, MHS&T Inspection Report).  The inspectors found that all of the violations were "reasonably likely" to result in injury to

---

[2]  In addition, Martin discussed unsafe conditions at plaintiff's shop, including "tripping hazards" in plaintiff's garage created by "extension cords that weren't proper, tanks that were sitting around unsecured, tools that had a lock on the trigger."  (<u>Id.</u> at 13).  Outside the shop, Martin observed that trucks "weren't properly blocked" and an unacceptable "amount of trash throwed [sic] around."  (<u>Id.</u> at 14).

workers, with the expected "severity of injury" ranging from "lost or restricted days" to "permanently disabling." (Id., Ex. B., MHS&T citations). Among the more "serious" violations cited by the inspectors was "excessive slack" in one truck's steering mechanism and brake problems in another truck. (Goroncy Dep. at 80-81). Another citation revealed that rags had been stuffed into the oil and power steering reservoirs of one truck in place of caps, creating a fire hazard. (Id.).

On September 2, 2009, upon learning of the results of MHS&T's inspection, Goroncy contacted plaintiff to inform him that Fola was terminating his coal hauling services effective that evening. (Def.'s Mot. Summ. J., Ex. C, Fola Ops. Interofice Communication). Goroncy confirmed that Fola had terminated all hauling services provided by plaintiff in a letter dated September 8, 2009. (Id., Ex. D, Goroncy Letter). As grounds for the termination, the letter cites the "numerous and persistent safety issues which are contrary to Fola Coal Company LLC's policies, law, and sound business practices. We have previously advised you of many of these issues and you have failed to correct them." (Id.).

## II.  Procedural Background

Plaintiff initiated this action in the Circuit Court of Clay County on March 4, 2010.  Defendant removed on April 23, 2010, invoking the court's diversity jurisdiction.[3]  The complaint asserts a claim for breach of contract, seeks declaratory relief concerning the rights, duties, and obligations of the parties, and demands compensatory damages.

Defendant moved for summary judgment on January 6, 2011, based upon the following grounds: (1) a condition of the contract between plaintiff and Fola was plaintiff's agreement to abide by all applicable federal, state and company safety statutes, rules and regulations; (2) Fola properly terminated its contractual relationship with the plaintiff based on plaintiff's failure to comply with safety rules and regulations; and (3) because plaintiff breached the contract, he was not entitled to a 90-day notice period before Fola could terminate the contract.  Plaintiff has not responded to defendant's motion for summary judgment and has informed the court's law clerk that he does not plan to file any response.

---

[3] This court denied plaintiff's motion to remand on September 7, 2010.  See Boggs v. Fola Coal Co., No. 2:10-0608, slip op. (S.D. W. Va. Sept. 7, 2010).

III.  Motion for Summary Judgment

A.  Governing Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.  A party is entitled to summary judgment if the record as

7

a whole could not lead a rational trier of fact to find in favor of the non-movant.  <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991).

In this case, plaintiff has not responded to defendant's motion for summary judgment.  This does not, however, automatically entitle defendant to summary judgment in its favor.  "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'"  <u>Custer v. Pan Am. Life Ins. Co.</u>, 12 F.3d 410, 416 (4th Cir. 1993).  Accordingly, a district court "considering a motion for summary judgment[] must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law."  <u>Id.</u>

B.   Breach of Contract

Defendant contends that the contract contained a termination clause authorizing Fola to terminate the contract if plaintiff violated applicable safety policies and regulations.  Relying on the testimony of its safety inspector and the MHS&T citations, defendant maintains that plaintiff violated Fola's safety performance policies as well as state safety regulations, and that this created cause for contract termination.

8

At the outset, the court concludes that defendant's uncontroverted evidence does show that plaintiff violated various safety rules and regulations. The next question is whether defendant permissibly terminated the contract on September 2, 2009 based on plaintiff's violations.

As noted, the termination clause in the contract provided that "[f]ailure to comply with safety performance policies or applicable federal, state, and local laws, rules and regulations will be cause for cessation of activity and/or contract termination." (Def.'s Mot. Summ. J., Ex. A, Attachment D to Fola's Request for Quotation (emphasis added)). The contractual language does not appear to impose a notice requirement or otherwise qualify defendant's right to terminate the contract for cause.[4] Accordingly, because the termination clause unequivocally authorized defendant to terminate the contract if plaintiff failed "to comply with safety performance policies or applicable federal, state, and local laws, rules and regulations," and in view of the evidence showing that plaintiff did violate Fola's safety performance policies and state safety regulations, the court concludes that defendant permissibly

---

[4] While the contract requires a 90-day notice period for contract terminations without cause, (see Compl. ¶ IV; Def.'s Mot. Summ. J., Ex. A, Scope of Work), there is no such language restricting defendant's right to terminate the contract for-cause.

9

terminated the contract for cause on September 2, 2009.

Although the court does not find that defendant was required to give notice before terminating the contract, it nonetheless acknowledges that courts "will frequently imply an obligation to give notice as a matter of common equity and fairness." McClain v. Kimbrough Constr. Co., 806 S.W.2d 194, 198 (Tenn. Ct. App. 1990) (citing Corbin on Contracts § 725 (1964); Pollard v. Saxe & Yolkes Dev. Co., 525 P.2d 88, 92 (Cal. 1974); Sturdy Concrete Corp. v. Nab Constr. Corp., 65 A.D.2d 262 (N.Y. 1978)). Assuming the court were to imply such an obligation in this case, it would conclude that defendant provided plaintiff with adequate notice and opportunity to cure before terminating the contract. The uncontroverted evidence shows that, throughout 2009, defendant's safety inspector and superintendent repeatedly urged plaintiff to fix his safety problems, and that plaintiff made little or no effort to do so. Furthermore, as early as June 2009, defendant's superintendent specifically informed plaintiff "that he had to improve his safety record and his compliance or else his services would be terminated." (Goroncy Dep. at 60). By the time of the contract termination in September 2009, then, it seems that plaintiff had been fairly apprised that defendant would terminate the contract if plaintiff did not change his behavior.

Plaintiff sets forth a "pretextual" breach of contract theory in his complaint. He maintains that his alleged safety violations were "extremely minor in nature and, in fact, when compared to the violations of other contractors on the work location, of greatly less significance than the violations of the other contractors." (Compl. ¶ VII). He further alleges that the "purported termination of the contract for safety reasons was a subterfuge undertake to hide the actual reason for the termination of the contract." (Id. ¶ VIII). The complaint does not clarify what this "actual reason" was, but plaintiff explains in a discovery response that "Fola Coal had approximately one million tons of coal on the ground . . . only one contractor was needed to move the coal . . . Defendant did not want to pay for three months notice of termination as provided in the contract, thus it created a reason for the contract to be terminated without notice." (Def.'s Mot. Summ. J. Mem. at 9 (quoting Pl.'s Ans. to Interrogs.)).

Whatever the merits of this breach of contract theory, plaintiff has offered no evidence to support his allegation that defendant terminated the contract for improper reasons. And based on defendant's evidence, which the court views as uncontroverted, the "actual reason" for the contract termination appears to have been plaintiff's repeated safety violations. Inasmuch as the contract authorized defendant to terminate

11

plaintiff's services for this very reason, plaintiff's breach of contract claim fails as a matter of law and defendant is entitled to summary judgment.

### IV. Conclusion

For the foregoing reasons, it is ORDERED that defendant's motion for summary judgment be, and it hereby is, granted.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: March 4, 2011

_____
John T. Copenhaver, Jr.
United States District Judge